## 48710. ROBERTSON v. SOUTHLAND LIFE INSURANCE COMPANY.

STOLZ, Judge. This is the second appearance of this case in this court. See *Robertson v. Southland Life Ins. Co.,* 127 Ga. App. 143 (192 SE2d 910), in which we held that the defendant insurer, which was defending on the basis of the lapse of the life insurance contract for nonpayment of premium, had failed to carry its burden of proof on summary judgment that it had presented a pre-authorized check to the insured's bank at the time the premium was due and that it had been returned or that the plaintiff beneficiary had failed or refused to supply pre-authorized checks. The defendant filed a second motion for summary judgment, from the granting of which the plaintiff appeals. *Held:*

1. Although the insured paid his first premium upon his signing of the application for insurance on April 13, 1970, and although the policy provides that there shall be no liability thereunder until delivery of the policy to the insured (which occurred on May 7, 1970), the evidence demanded a finding that the premium in question was due on August 23, 1971. The policy was dated April 23, 1970, and provides that when it is delivered and paid for, the policy shall be in force *from its policy date;* that "policy years, months and anniversaries will be determined *from the policy date* which is the effective date of this policy" (emphasis supplied); that the premium was due *as of the annual policy date* and thereafter as provided in the policy (monthly). The premiums were paid by the insured monthly on the 23rd day by pre-authorized checks. The policy was effective as of the policy date as a matter of law. See Code Ann. § 56-2429 (Ga. L. 1960, pp. 289, 671).

2. The uncontested showing of the defendant upon the present motion was that it had presented the pre-authorized check to the insured's bank at the time the premium was due (August 23, 1971); that the check had been dishonored and returned marked "account closed"; that the insured received the defendant's written notice, dated September 14, 1971, of the dishonored check; that neither the insured nor the plaintiff had ever paid the premium within the grace period or at any time thereafter, either by valid, pre-authorized check or otherwise; and that the insured died on September 25, 1971, after the expiration of the grace period. As to the contention that the affidavits supporting the motion did not affirmatively appear to have been made upon the affiant's personal knowledge, see *Harvey v. C. W. Matthews Contracting Co., Inc.,* 114 Ga. App. 866 (1) (152 SE2d 809) and cits. The above facts demanded a finding that the policy had lapsed as a matter of law. See *Kersh v. Life & Cas. Ins. Co.,* 109 Ga. App. 793 (2) (137 SE2d 493); *Progressive Life Ins. Co. v. Reeves,* 89 Ga. App. 900 (81 SE2d 519); *Gulf Life Ins. Co. v. Frost,* 125 Ga. App. 63, 66 (186 SE2d 456); *Bankers Health & Life Ins. Co. v. Crozier,* 65 Ga. App. 329 (1) (16 SE2d 65).

3. The plaintiff contends that the policy did not automatically lapse for failure to pay the premium, and that it had to be affirmatively canceled by the defendant insurer by written notice of cancellation under the provisions of Code Ann. § 56-2430 (Ga. L. 1960, pp. 289, 671; 1967, p. 653; 1968, p. 1126).

This contention is without merit. Code Ann. § 56-2430 has no application in this case as it applies only to the *cancellation* of an insurance policy. The facts in the case show beyond all doubt or question that the insurance policy in issue was not *canceled,* but simply *expired* or *lapsed* because of nonpayment of premium. Code Ann. § 56-2429 (Ga. L. 1960, pp. 289, 671) provides: "A policy of insurance or an annuity or endowment contract shall run from mid-day of the date of the policy or contract, and the time shall be calculated accordingly, if the policy or contract is to be in force for a specified period of time unless the hour and minute of attachment of liability is specified." As noted in Division 1, the policy date was April 23, 1970, and the premiums were due as of the annual policy date and thereafter as provided in the policy (monthly). Each monthly premium as it was paid extended the life of the insurance policy for an additional premium paying period and continued the grace period in effect. See Code Ann. § 56-2503 (1) (a) (Ga. L. 1960, pp. 289, 677). The failure to make

timely payment of the premium, even within the grace period, caused the policy to expire. To hold otherwise would extend indefinitely the grace period for the payment of premium, which by statute is limited to 30 days, unless otherwise provided in the insurance contract, if the insurer does not meet the requirements of "cancellation" provided by Code Ann. § 56-2430, supra. We believe it unreasonable to hold that the General Assembly intended to create such a situation with the enactment of this statute. The statute does not apply, nor was it intended to apply, to the expiration or lapse of an insurance contract (policy) because of failure to pay premium necessary to keep a policy in force according to its terms.

The defendant's showing upon the present motion having supplied the deficiencies pointed out by this court on the previous appeal, the trial judge correctly granted summary judgment in favor of the defendant.

*Judgment affirmed. Eberhardt, P. J., concurs. Pannell, J., concurs specially.*

SUBMITTED OCTOBER 9, 1973 — DECIDED JANUARY 17, 1974 — REHEARING DENIED FEBRUARY 8, 1974 —

*Robinson, Buice, Harben & Strickland, Sam S. Harben, Jr.,* for appellant.

*Smith, Smith & Frost, R. Wilson Smith, Jr.,* for appellee.

PANNELL, Judge, concurring specially. I concur in the result reached by the majority opinion, but I do not concur in the construction of the statute (Code § 56-2430), that is, that it applies only to "cancellations," which holding implies that the statute requiring notice of cancellation does not apply in any case where the policy has a built-in or automatic expiration, termination or cancellation clause. That construction gives too much emphasis to one word in the statute, rather than its overall purpose and intent. It is my opinion there may be many instances where an automatic expiration or termination provision in a policy would be ineffective in the absence of a notice under the statute; otherwise, an insurance company, by providing for automatic termination or expiration under various conditions, could completely evade this statute.

This court took two divergent views on the construction of this statute in *Thames v. Piedmont Life Ins. Co.,* 128 Ga. App. 630 (197 SE2d 412), neither of which views is binding upon this court, and

neither of which I agree with. The "majority" view held any termination of the policy is ineffective unless a notice of cancellation is given under the statute. The "minority" view was that the statute applied only to instances where the insurer had an *option* to terminate under the provisions of the policy and when a return of unearned premiums was required. My views are as follows:

Construction of Code § 56-2430. (a) If the broad ruling in the "majority opinion" in the *Thames* case is correct then it would follow that an ordinary life policy where premiums are to be paid at regular intervals can, if the insurer does not meet the requirements of "cancellation" provided by the statute, become a policy of lifetime protection without payment of premiums (the *basic consideration* for the protection provided by the policy), except as deductions from the amount of the death claim. It is unreasonable to believe that the legislature intended to create this condition by the enactment of the statute. The statute does not apply, nor was it intended to apply, to the termination and cancellation thereof because of the failure to pay premiums *necessary to keep a policy in force according to its terms.* To hold otherwise would create a lifetime "grace period" for payment of premiums, with premiums payable only at death by deductions from the death benefit, which in some instances might actually be less than the premiums.

(b) I do not agree with the concept that the use of the language "cancellation of a policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein" makes the statute applicable, by the use of the word "may," only where the "terms and conditions" of the policy give the insurer an *option* to *cancel.* To use this as a basis for the construction would permit any insurer, by changing its policy so as to make termination or cancellation automatic on certain conditions, to completely evade the beneficent purposes of the statute, just as the construction by the majority here. In my special concurrence in the *Thames* case I concurred "in principle with the construction given the statute in the dissenting opinion" that it did not apply to the situation there involved, but not for the specific reasons given.

(c) Neither do I agree that the provision in the statute for the return of unearned premiums makes it apply only to situations where there are unearned premiums to be returned. If that be a proper *reason* to arrive at the present *result* under the statute, then

cancellation for any reason during the grace period where a premium had not been paid and no return of unearned premium would be involved, would be permissible without complying with the statute. This *reason* would also permit cancellations of insurance contracts during the grace period for reasons which the statute was clearly designed to cover and for which the statute surely intended that the insurer provide a notice in accordance therewith.

The *Thames* case: The broad ruling in the "majority opinion" in the *Thames* case is agreed to by three judges (Evans, J., the writer of this opinion, Deen, J., and Clark, J.). Hall, P. J., concurred in the judgment only, with no opinion. The writer concurred in the judgment of reversal, reversing a summary judgment, which was granted by the trial judge in favor of the insurer, because of the view I held that there was evidence of waiver of the automatic cancellation provision, and a jury would have been authorized to so find. I also concurred with Bell, C. J., Quillian, J., and Stolz, J., that the statute requiring notice of cancellation did not apply, making four judges of that opinion. While that amounted to a score of four to three, to those expressly holding as to the applicability or nonapplicability of the statute to all terminations and cancellations of insurance contract (and may have become the law of the case, insofar as the trial judge was concerned, Hall, P. J., giving no reason for his concurrence in the judgment of reversal of the case), the *Thames* case is, nevertheless, not authority binding on this court as to anything therein said or ruled for the simple reason no five judges agreed on anything said therein. For this reason, we are not primarily concerned with the *Thames* case, although I think this court should disapprove the broad ruling of the "majority" opinion, as well as the "minority" "dissenting" opinion.

The cases cited in support of Division 2 of the opinion would have no application here if the statute were to be construed as having application to the facts in those cases. Two of the cases cited (*Kersh v. Life & Casualty Ins. Co.,* 109 Ga. App. 793 (2) (137 SE2d 493) and *Gulf Life Ins. Co. v. Frost,* 125 Ga. App. 63, 66 (186 SE2d 456)) while decided after the statute was enacted, appear to have been decided without reference thereto, and no question as to its applicability was raised or decided. The cases were decided solely on the basis of whether a waiver of the automatic termination of the policy had occurred. These physical precedents are not controlling authority on the construction of the statute in the *Thames* case, either by

the "majority" or by the "dissenters." While I agree that these decisions are applicable and controlling here, because the statute requiring notice of cancellation does not apply and the provisions of the contract control, I do not agree that they are authority for a ruling that the statute does not apply.

Conclusions. I feel that the "majority" approach in the *Thames* case, so as to apply the statute to all instances of expiration, termination and cancellation of insurance contracts, is unsound. I also consider the construction of the statute as applying only to cases where the insurer has an option and to cases where unearned premiums are to be refunded to be too restrictive a construction of the statute. In following either of these reasons, or methods of construction of the statute, as well as tying ourselves to the word "cancellation," we reach conclusions which in many instances may be unsupportable. If we permit automatic terminations of insurance contracts, where the payment of premiums and the nature and purposes of the insurance contract itself are apparent, which may broadly speaking be the basic consideration and purposes of the agreement, we may be on much safer ground. For instance, where insurance for a designated term at a designated premium which is paid and term insurance which is renewable, credit insurance which may be term insurance or limited as to time or duration (the *Thames* case seems to be hybrid), are involved may be more equitably and properly determined on the basic consideration or purpose basis, rather than the bare word "cancellation" so that both the insured and the insurer will be protected. That is, that a policy can automatically terminate when the basic consideration and purposes no longer exist according to the terms and provisions of the contract, but that termination or cancellation for any other reason must be effected solely through the provisions of the statute by the giving of the notice therein provided. While this concept may not eliminate difficulty in applying the statute, it will eliminate the incongruous results which have been and may be later reached by other approaches to its construction, such as those espoused by the "majority" and "minority" in the *Thames* case, and the accent on the word "cancellation" as distinguished from termination and expiration, as is done by the majority in the present case.

ON MOTION FOR REHEARING.

STOLZ, Judge. Appellant urges that this case is controlled by the earlier decision of this court in *Parham v. National Relief Assur. Co.*, 33 Ga. App. 59 (125 SE 519). The two cases have factual

distinguishing differences.

In *Parham,* the policy was dated March 28, 1921, and recited that the insured was insured from 12:00 o'clock noon on that day until 12:00 o'clock noon of May 1, 1921, and for such further periods stated in the renewal receipts as the renewal premium of $3.72 per month paid by the insured would maintain the policy in force. It was expressly stated in the application for the policy, which was signed by the insured and attached to the policy and, by the express terms of the policy, and made a part of the insurance contract, *that the insurance was not to take effect until the delivery of the policy to the insured.* Undisputed evidence showed that delivery of the policy was not made until April 4, 1921, *at which time the first monthly premium was paid.* The insured was injured on September 3, 1921. This court held that the insured was covered when the inconsistent provisions of the policy were construed in favor of the insured.

In the case before us, the first premium was paid on April 13, 1970, at the time the application was made. The application for insurance, which was made a part of the policy, provided that coverage existed only upon the policy's being "issued and manually delivered to the Owner and accepted by such Owner . . . and the first premium thereon shall be actually paid to and accepted by the company . . . provided, however, that if at the time of the completion of this application the proposed Insured is insurable, *and if the first premium is paid in cash* . . . at the time of making this application, . . . then the insurance (subject to the provisions of the policy applied for) shall be effective. . . ." The application showed on its face the payment of the first premium of $12.38 with the application on April 13, 1970, thus giving the applicant insurance coverage prior to the delivery of the policy.

*Motion for rehearing denied. Judgment adhered to. Eberhardt, P. J., and Pannell, J., concur.*