686 F.2d 894
 Kevin S. KING, as Executor of the Estate of Arnie Naiditch,
deceased, Plaintiff-Appellant,
v.
The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,
Defendant-Interpleading Plaintiff-Appellee,
v.
Julie Riley ANDRUS, s/k/a Julia R. Naiditch, Interpleaded Defendant.
 No. 81-7558.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 24, 1982.
 
 1
 Trauner, King & Cohen, Stanton J. Shapiro, Atlanta, Ga., for plaintiff-appellant.
 
 
 2
 W. Rhett Tanner, William B. B. Smith, Atlanta, Ga., for Guardian Life Ins.
 
 
 3
 Hayes & Hayes, Moses S. Hayes, Jr., Atlanta, Ga., for interpleaded defendant.
 
 
 4
 Appeal from the United States District Court for the Northern District of Georgia.
 
 
 5
 Before TJOFLAT and HENDERSON, Circuit Judges, and LYNNE*, district judge.
 
 LYNNE, District Judge:
 
 6
 Ga.Code Ann. § 56-2430 (1977) provides that "(c)ancellation of (an insurance) policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein." Under that statute, the insurer must send notice of cancellation of policies "protecting the interest of the insured and any lienholders" to the insured and any lienholders shown in the policy. The notice must state when the cancellation will be effective, but cancellation may not be made effective less than thirty days from the date of the notice, except with respect to certain policies for which a fifteen-day period is permitted. A proviso to the statute shortens the otherwise applicable time period "when a policy is cancelled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for the policy." For such cancellations, the insurer must give not less than ten days notice.[1]
 
 
 7
 The sole issue before us in this diversity action, to which the substantive law of Georgia applies, is whether an insurer must comply with the requirements of § 56-2430 when a policy expires or lapses according to its terms upon the policyholder's failure to pay the premiums. Plaintiff, the appellant here, brought this suit as the executor of the estate of Arnie Naiditch, an insured under a policy providing life insurance, and seeks to recover the proceeds from The Guardian Life Insurance Company of America ("The Guardian"), which issued the policy.[2] In response to the defendant insurer's motion for summary judgment on the ground that coverage expired prior to Naiditch's death because premiums were not paid, the executor asserted that the insurer failed to give the notice required by § 56-2430 and moved for partial summary judgment on the issue of coverage. Relying upon the construction given the statute and its predecessor versions by the Georgia Court of Appeals, the district court concluded that expiration or lapse of a policy according to its terms does not constitute a "cancellation" to which § 56-2430 applies. Accordingly, the district court granted the insurer's motion for summary judgment, denied the executor's motion for partial summary judgment, and subsequently denied the executor's motion for reconsideration. The executor appeals from these rulings. We affirm.
 
 I.
 
 8
 Arnie Naiditch was president of a company known as Black Dog Productions. On June 5, 1979, the company, acting through Naiditch, requested and was granted coverage as a participating employer in a "master group trust policy" issued by The Guardian. The policy provided life insurance to Naiditch as an employee of Black Dog Productions. On June 8, 1979, the company, again acting through Naiditch, executed a form authorizing the insurer to draw monthly premium checks against the company's bank account.
 
 
 9
 Checks issued under the pre-authorized check plan for payment of premiums due on August 15, September 15, and October 15 of 1979 were dishonored for lack of sufficient funds. The insurer mailed a letter to Naiditch on October 31, 1979, advising him that the August and September drafts had been dishonored and requesting a "replacement check." On December 14, 1979, the insurer mailed Naiditch a second letter advising him that "we must cancel your group policy with The Guardian effective September 15, 1979," for nonpayment of premiums. Naiditch had died, however, on November 29, 1979.
 
 
 10
 Under the terms of the policy and the pre-authorized check plan, the insurance was no longer in force on the date of Naiditch's death. The policy provided a grace period for the late payment of premiums:
 
 
 11
 A grace period of thirty-one days, without interest charge, will be allowed the Policyholder for the payment of the premium due under this Policy on any due date except the first. If any premium with respect to the Employees of any Participating Employer is not paid before the expiration of the grace period, this policy shall automatically terminate with respect to all Employees of such Participating Employer at the expiration of the grace period ....
 
 
 12
 The pre-authorized check plan provided that "(i)f a check is refused payment by the bank for any reason, other than an error in drawing, it will be determined that payment of premium was not tendered by the policyholder and the policy will lapse subject to the grace period provision of the policy." No premium payment was made on or after August 15, 1979. Coverage therefore lapsed under the terms of the policy after the thirty-one day grace period expired on September 15, 1979, well before Naiditch's death more than two months later.
 
 
 13
 As the facts indicate, the insurer gave no notice of cancellation prior to Naiditch's death. Arguing that § 56-2430 required such notice, the executor seeks to escape the automatic expiration provisions of the policy and pre-authorized check plan. We find that avenue of escape foreclosed.
 
 II.
 
 14
 In Robertson v. Southland Life Insurance Co., 130 Ga.App. 807, 204 S.E.2d 505 (1974), upon which the district court relied, a beneficiary of a life insurance policy sought to recover the proceeds, but the Georgia Court of Appeals found that the policy was not in effect on the date of the insured's death. According to the court, it had previously lapsed at the end of a grace period following the dishonor of a premium check drawn under a pre-authorized check plan. In response to the beneficiary's argument that the policy could not lapse but had to be affirmatively cancelled by written notice in accordance with § 56-2430, the court stated:
 
 
 15
 This contention is without merit. Code Ann. § 56-2430 has no application in this case as it applies to the cancellation of a policy. The facts show beyond all doubt or question that the insurance policy in issue was not canceled, but simply expired or lapsed because of nonpayment of premium.... The statute does not apply, nor was it intended to apply, to the expiration or lapse of an insurance contract (policy) because of failure to pay premium necessary to keep a policy in force according to its terms.
 
 
 16
 Id. at 808-809, 204 S.E.2d at 506-507.
 
 
 17
 The court in Robertson construed a version of § 56-2430 enacted in 1968.[3] That version, as does the present version, provided that "(c)ancellation of a policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein." The 1968 version, however, made no reference to cancellation for nonpayment of premiums. A subsequent version of § 56-2430, enacted in 1973, added such a reference by including a proviso shortening the otherwise applicable time periods "when a policy is cancelled for nonpayment of premium."[4] The current version of the statute, enacted in 1975,[5] modified the proviso to allow the shorter notice "when a policy is cancelled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for the policy, or any installment thereof, whether payable directly to the insurer or indirectly under any premium finance plan or extension of credit." The 1975 version, which appears in Ga.Code Ann. § 56-2430 (1977), is the one in question in the instant case.
 
 
 18
 The executor concedes defeat if Robertson governs the interpretation of § 56-2430 as it now reads. He maintains, however, that Robertson no longer controls because the addition of the proviso in 1973, specifically referring to nonpayment of premiums, manifested the Georgia legislature's intent to require notice for any termination of coverage resulting from such nonpayment, whether by the insurer's affirmative act of cancellation or by expiration or lapse of the policy according to its terms. He suggests that this perceived intent was again expressed by the modification of the proviso in 1975. According to the executor, continued recognition of the distinction between cancellation and lapse renders the proviso to the statute meaningless. Under that distinction, he argues, the proviso, allowing a shorter time for cancellation due to nonpayment of premiums, would have no sphere in which to operate because insurers could avoid the requirements of § 56-2430 entirely simply by including policy provisions for automatic lapse in the event of nonpayment.
 
 
 19
 We find the executor's arguments unconvincing. His contention that Robertson is no longer authoritative rests upon the implicit premise that the decision held (1) expiration or lapse of a policy according to its terms amounts to a "cancellation" but (2) cancellation for nonpayment of premiums was not within the scope of the 1968 version of § 56-2430. If such were the case, the addition of the proviso to the statute might well be said to have undermined Robertson 's continued validity. As we read the decision, however, it held that expiration or lapse of a policy does not amount to "cancellation" within the meaning of § 56-2430. The proviso added to the statute did not change the operative language of the statute making it applicable to "cancellation" but only modified the applicable time periods. In our opinion, Robertson retains its validity.
 
 
 20
 Furthermore, as the district court noted, two decisions of the Georgia Court of Appeals arising under the post-1973 versions of the statute have upheld the distinction between cancellation and expiration or lapse. In Uniguard Mutual Insurance Co. v. Fox, 142 Ga.App. 706, 236 S.E.2d 851 (1977), a fire insurance case, the court cited Robertson for the proposition that "(w)here the policy expires no notice of cancellation is necessary." Id. at 707, 236 S.E.2d at 852. Again citing Robertson, in Liberty National Life Insurance Co. v. Davis, 146 Ga.App. 38, 245 S.E.2d 316 (1978), the court found that § 56-2430 was not applicable when a life insurance policy expired due to nonpayment of premiums. Though neither of these decisions expressly considered the effect of the 1973 and 1975 changes in the statute, they lend weight to the view that Robertson remains authoritative.
 
 
 21
 The Georgia Supreme Court has never addressed the applicability of § 56-2430 to the expiration or lapse of coverage under the terms of a policy. In the absence of a decision from the state's highest court, we "must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." Flintkote v. Dravo Corp., 678 F.2d 942 at 945 (11th Cir. 1982). In this case we are not persuaded that the Georgia Supreme Court would reject the distinction set forth in Robertson and recognized in subsequent cases. Despite the executor's arguments to the contrary, this distinction does not necessarily render the statute "meaningless." It is plausible to suggest that insurers in competition with each other, for business or economic reasons, might prefer to utilize a policy provision giving them an option to cancel in lieu of an automatic lapse provision. Moreover, the distinction itself is not without substance. The statute may fairly be read as evidencing a concern for the protection of the insured or other interested parties where the insurer elects to exercise a right to terminate coverage granted it by the policy. Where, however, the policy by its terms automatically terminates upon the happening of some event within the control of the insured or other interested parties, that concern is no longer present.
 
 III.
 
 22
 "We generally defer to an interpretation of state law by a federal district judge sitting in that state, provided his interpretation appears to be reasonable and consistent with the state's law." Faser v. Sears, Roebuck & Co., 674 F.2d 856, 859 (11th Cir. 1982). In this case it is abundantly clear that the interpretation of the district judge, sitting in Georgia and versed in its contemporary jurisprudence, was reasonable and consistent with the body of state law available. We therefore
 
 
 23
 AFFIRM.
 
 
 
 *
 Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 The full text of § 56-2430 provides:
 Cancellation of a policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein: Written notice, stating the time when the cancellation will be effective, but not less than 30 days from date of notice except with respect to property and casualty policies insuring industrial and commercial concerns in which notice of cancellation shall not be less than 15 days, or such other specific longer period as may be provided in the contract or by statute, may be delivered in person, or by depositing such notice in the United States mails to be dispatched by at least first class mail to the last address of record of the insured and receiving therefor the receipt provided by the United States Post Office Department. Such notice may or may not be accompanied by a tender of the unearned premium paid by the insured calculated on a pro rata basis. If such tender is not made simultaneously with such notice, it shall be made within 15 days of notice of cancellation, unless an audit or rate investigation is required in which case such tender shall be made as soon as practicable. Notices of cancellation of policies protecting the interest of the insured and any lienholder shall be delivered or mailed to the last addresses of record as provided herein to the insured and to the lienholders shown in the policy and shall specify when, not less than 30 days from the date of notice, except with respect to property and casualty policies insuring industrial and commercial concerns in which notice of cancellation shall be not less than 15 days, or such longer period as may be provided in the contract or by the statute, the cancellation shall become effective: Provided, however, when a policy is cancelled for failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums for the policy, or any intallment (sic) thereof, whether payable directly to the insurer or indirectly under any premium finance plan or extension of credit or a policy which has been in effect for less than 60 days is cancelled for any reason, the notice requirements of this section may be satisfied by giving not less than 10 days written notice to the insured and lienholder, where applicable, in lieu of the number of days notice otherwise required herein.
 Ga.Code Ann. § 56-2430 (1977).
 
 
 [2]
 The named beneficiary of the policy was Julie Riley Andrus Naiditch, and the insurer added her as a defendant by way of a counterclaim for interpleader. She admitted in her answer to the counterclaim for interpleader that she has assigned all of her rights to life insurance proceeds under the policy to the plaintiff in this action
 
 
 [3]
 The version of § 56-2430 interpreted in Robertson read:
 Cancellation of a policy which by its terms and conditions, may be cancelled by the insurer shall be accomplished as prescribed herein: Written notice, stating the time when the cancellation will be effective, but not less than five days from date of notice, or such other specific longer period as may be provided in the contract or by statute, may be delivered in person, or by depositing such notice in the United States mails to be dispatched by at least first class mail to the last address of record of the insured and receiving therefor the receipt provided by the United States Post Office Department. Such notice may or may not be accompanied by a tender of the unearned premium paid by the insured calculated on a pro rata basis. If such tender is not made simultaneously with such notice, it shall be made within 15 days of notice of cancellation, unless an audit or rate investigation is required, in which case such tender shall be made as soon as practicable. Notices of cancellation of policies protecting the interest of the insured and any lienholder shall be delivered or mailed to the last addresses of record as provided herein to the insured and to the lienholders shown in the policy and shall specify when, not less than 10 days or such longer period as may be provided in the contract or by the statute, the cancellation shall become effective.
 Act of April 8, 1968, 1968 Ga. Laws 1126 (superseded in 1973).
 The Georgia Court of Appeals had previously addressed the applicability of this version of § 56-2430 to "automatic termination" of a policy upon the happening of a specified event in Thames v. Piedmont Life Insurance Co., 128 Ga.App. 630, 197 S.E.2d 412 (1973). That decision, however, produced no controlling opinion on the issue.
 
 
 [4]
 Section 56-2430, as enacted in 1973, provided in full:
 Cancellation of a policy which by its terms and conditions may be cancelled by the insurer shall be accomplished as prescribed herein: Written notice, stating the time when the cancellation will be effective, but not less than thirty (30) days from date of notice, except with respect to property and casualty policies insuring industrial and commercial concerns in which notice of cancellation shall not be less than fifteen (15) days, or such other specific longer period as may be provided in the contract or by statute, may be delivered in person, or by depositing such notice in the United States mails to be dispatched by at least first class mail to the last address of record of the insured and receiving therefor the receipt provided by the United States Post Office Department. Such notice may or may not be accompanied by a tender of the unearned premium paid by the insured calculated on a pro rata basis. If such tender is not made simultaneously with such notice, it shall be made within 15 days of notice of cancellation, unless an audit or rate investigation is required in which case such tender shall be made as soon as practicable. Notices of cancellation of policies protecting the interest of the insured and any lienholder shall be delivered or mailed to the last addresses of record as provided herein to the insured and to the lienholders shown in the policy and shall specify when, not less than thirty (30) days or such longer period as may be provided in the contract or by the statute, the cancellation shall become effective. Provided, however, when a policy is cancelled for nonpayment of premium or a policy which has been in effect for less than 60 days is cancelled for any reason, the notice requirements of this Section may be satisfied by giving not less than ten (10) days written notice to the insured and lienholder, where applicable, in lieu of thirty (30) days.
 Act of April 13, 1973, 1973 Ga. Laws 499, 501 (superseded in 1975).
 
 
 [5]
 Act of April 24, 1975, 1975 Ga. Laws 1242